

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00560-CR

Vernon Lee **TRAVIS**, III,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B13637
Honorable Stephen B. Ables, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:     Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  November 10, 2015

AFFIRMED

Vernon Lee Travis, III appeals his conviction for burglary of a habitation with intent to commit aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 30.02 (West 2011).  We overrule Travis's issues on appeal and affirm the trial court's judgment.

### BACKGROUND

On September 5, 2013, two men wearing bulletproof vests kicked in the front door and entered the home located at 347 Madrona, Kerrville, Texas with their handguns drawn.  The male occupant locked himself inside a bedroom, while the female occupant and her child remained in

the living room with one of the gunmen. Travis banged on the bedroom door yelling for the man to come out and pay the money he owed "Big Mike." The man fired a shot through the bedroom door, and Travis fired two to three shots through the door into the bedroom. Travis and the other gunman then fled in a blue vehicle, but were intercepted by a DPS trooper who gave chase. After throwing the guns out the window, they abandoned the vehicle and ran into the woods. Travis surrendered to the officers. The officers recovered the two handguns and apprehended the other suspect, Timothy Scott Pugh. Both men were indicted for burglary with intent to commit aggravated assault with a deadly weapon.

After the jury was impaneled in Travis's case, he entered a plea of guilty to the charged offense. After the State presented its evidence, the jury was instructed to return a verdict finding Travis guilty, which it did, and trial then proceeded into the punishment phase before the jury. Several witnesses testified during punishment, including the two complainants, Travis and members of his family, and Dr. John Roache, a psychiatrist. Dr. Roache reviewed Travis's recent medical records diagnosing him with post-traumatic stress disorder ("PTSD") and related polysubstance use disorder and drug induced mood disorder and testified that he agreed with the diagnosis based on his evaluation of Travis and Travis's account of his military service in Iraq. The jury recommended punishment be assessed at 55 years' imprisonment, and the trial court imposed a sentence in accordance with the jury's verdict. Travis now appeals.

## ANALYSIS

On appeal, Travis raises two issues, asserting that (1) the trial court erred in excusing Venire Member No. 3 for cause, and (2) his trial counsel rendered ineffective assistance.

### Challenge for Cause

During general voir dire questioning concerning the potential jurors' ability to consider the full range of punishment, the panel was asked whether anyone had any knowledge or experience

with PTSD. Venire Member No. 3 identified himself as a military veteran and stated that he serves as a veterans' service officer and has "dealt with a lot of vets." When asked by defense counsel to give his definition of PTSD, Venire Member No. 3 stated that PTSD arises when an individual has "faced a trauma beyond their mind's ability to easily deal with," and that it is not limited to veterans although they are the largest category of sufferers. Upon further questioning by counsel, Venire Member No. 3 stressed the importance of a person with PTSD receiving appropriate support and individualized treatment, and stated that "secondary conditions" such as depression, alcoholism, and substance abuse may occur when a person does not receive support and treatment.

Venire Member No. 3 was then questioned individually at the bench on the issue of PTSD. The prosecutor asked, "If you have a situation where you were presented with evidence of PTSD, could you ever entertain a sentence of 99 years?" Venire Member No. 3 answered, "No, sir." Defense counsel objected that the question constituted an improper commitment question. The court acknowledged that no evidence had been presented yet and that no one could know whether PTSD would come up during trial, but overruled the objection because there had already been extensive discussion about PTSD with the jury panel. Venire Member No. 3 stated that he understood that no assumptions could be made that evidence of PTSD would be presented at trial, acknowledging that "we haven't received any information that there has been a diagnosis or there is any particular thing." Venire Member No. 3 went on to express his feelings that "[i]f PTSD is a factor" there should be an option for treatment "even if punishment is required."

The individual questioning by the State then turned to whether Venire Member No. 3 could keep his knowledge of PTSD to himself and not inform the other jurors about PTSD beyond any evidence of PTSD that might be presented at trial. Defense counsel objected that the prosecutor's question misstated the law because a juror is allowed to use his personal experiences in his

deliberations. The trial court overruled the objection and instructed the prosecutor to re-state his question. The following exchange then occurred:

> PROSECUTOR: If I didn't state it accurately, each individual juror is a part of their own personal environment.
>
> PROSPECTIVE JUROR: Sure.
>
> PROSECUTOR: And that's part of the process. You're absolutely entitled to it. What I meant was that you can't share it . . . If it didn't come from the witness stand, it's not appropriate for you to share anything you know with the other jurors. That's what I meant. Not that it can't be a factor for you - -
>
> PROSPECTIVE JUROR: I understand.
>
> PROSECUTOR: - - but it can't be for somebody else. And I don't know that I'm asking you to do something, but for some people, that might be saying, you might as well tell me I can't breathe.
>
> PROSPECTIVE JUROR: Well, given the fact that it hasn't come up yet, several years ago, I could have definitively said, no problem because I was a different person then, but I've been trained and dealt with this issue. It would be very hard. I'm not going to lie to you about that. If I know something and it has a bearing, it would be very hard not to say something.

The prosecutor then inquired of Venire Member No. 3 whether he could set aside his personal knowledge of PTSD in the following exchange:

> PROSECUTOR: You would have to make a decision based solely on what you hear from that witness stand and nothing else. Can you do that? You're the only one that can answer the question. There is no shame in either answer.
>
> PROSPECTIVE JUROR: Well, since I have nothing to go on, I could just throw out a yes or no. Truth is that based on what I hear, it's really going to determine what did I know because they said something or didn't say something. So especially if somebody doesn't say something that should have been said, that falls into that. That's why it's hard. If I know it, I know it. And that's a - - I can try but - -
>
> PROSECUTOR: The risk is there?
>
> PROSPECTIVE JUROR: The risk is there.

The questioning of Venire Member No. 3 ended there, and the court indicated that challenges could be raised at the end of individual voir dire. When the court asked for any challenges, the State challenged Venire Member No. 3 for cause based on "his inability to commit that he would not inject personal knowledge into the equation." Defense counsel objected, arguing that "just because he has past experiences and knowledge of it [PTSD] doesn't necessarily disqualify him as a juror. He never came out and said, I'm not going to do that, I am going to do this, or I am going to do that. He said I would try and I would tell you that I'm going to do that, but I can't tell you for sure. He hasn't heard any of the facts. He doesn't know the evidence, so he can't sit here and tell us what he is or is not going to do." The court then sustained the State's challenge for cause and excused Venire Member No. 3.

On appeal, Travis asserts the trial court abused its discretion in excusing Venire Member No. 3 for cause. Specifically, Travis argues that Venire Member No. 3 "did not give any answer that would support a strike for cause" by the State under article 35.16. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16 (West 2006). Article 35.16 of the Code of Criminal Procedure provides several grounds on which the State may challenge a potential juror for cause, including a bias or prejudice in favor of the defendant or a bias or prejudice against the applicable law. TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9), (b)(3). "The test is whether a bias or prejudice would substantially impair the venire member's ability to carry out the juror's oath and judicial instructions in accordance with the law." *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010). The proponent of the challenge for cause has the burden to establish that the venire member understands the requirements of the law and cannot overcome his or her prejudice well enough to follow the law. *Id.* (noting the law must be explained to the venire members and they must be asked whether they can follow that law, regardless of their personal views). The trial court's ruling on a challenge for cause is reviewed with considerable deference to the court's position in evaluating the venire

member's demeanor and responses, and may be reversed only for a clear abuse of discretion. *Id.*; *Gardner v. State*, 306 S.W.3d 274, 295-96 (Tex. Crim. App. 2009). In reviewing the court's ruling, we look at the entire record of voir dire to determine whether the evidence is sufficient to support the ruling. *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011).

Here, the State explained the law requiring a juror to refrain from discussing his own personal knowledge or experiences with the other jurors during deliberations, and asked Venire Member No. 3 whether he could follow that law. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). The record, as recited above, shows that Venire Member No. 3 vacillated in his answer to the question of whether he could refrain from sharing his personal expertise with PTSD with the other jurors. Venire Member No. 3 acknowledged his understanding of the law, and stated that several years ago he could have followed it with "no problem." But, Venire Member No. 3 went on to state that due to his training and experience dealing with PTSD, he now felt "it would be very hard," explaining that, "If I know something and it has a bearing, it would be very hard not to say something." In response to further questioning about whether he could base his decision solely on the evidence presented at trial, Venire Member No. 3 reiterated that it would be hard, "especially if somebody doesn't say something that should have been said . . . If I know it, I know it." Venire Member No. 3 stated that he could try, but ultimately concluded, "[t]he risk is there." When a venire member gives responses that are "vacillating, unclear, or contradictory," we give particular deference to the trial court's ruling on the challenge for cause. *Davis*, 329 S.W.3d at 807; *Gardner*, 306 S.W.3d at 296. Applying the highly deferential standard of review to the voir dire record, we cannot say that the trial court clearly abused its discretion in granting the State's challenge for cause against Venire Member No. 3 on the ground that he could not overcome his

bias and follow the applicable law. *See Davis*, 329 S.W.3d at 807. Therefore, we overrule Travis's first issue.[1]

### *Ineffective Assistance of Counsel*

Travis asserts his trial counsel rendered ineffective assistance by (i) failing to file a pre-trial motion to suppress his videotaped statement to police, and by (ii) failing to inquire into the type of medication administered to him before his testimony. He argues he was prejudiced by such deficiencies because he appeared to be intoxicated on the videotape and the effects of the medication were not explored.

To establish ineffective assistance, Travis has the burden to prove that his trial counsel's performance was deficient and that it prejudiced his defense, in that there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). Travis must provide a sufficient record that affirmatively demonstrates ineffective assistance by a preponderance of the evidence, and overcomes the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Lopez v. State*, 343 S.W.3d 137, 142-43 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To establish deficient performance, Travis must show that counsel's performance fell below an objective standard of reasonableness and must rebut the presumption that counsel's decisions were based on sound trial strategy. *Thompson*, 9 S.W.3d at 812-13. In evaluating counsel's performance, we do not focus on isolated acts or omissions, but review the totality of counsel's representation without the benefit of hindsight. *Lopez*, 343 S.W.3d at 143;

---

[1] In his brief, Travis also argues the State's question about whether Venire Member No. 3 would be able to consider the maximum punishment if the defendant suffered from PTSD was an improper commitment question. *See Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001). However, the State's challenge for cause was not based on this ground.

*Thompson*, 9 S.W.3d at 813. Failure to prove either prong of the *Strickland* test will defeat an ineffective assistance claim. *Perez*, 310 S.W.3d at 893; *Thompson*, 9 S.W.3d at 813.

Although Travis filed a motion for new trial raising ineffective assistance of counsel, no evidentiary hearing was held; therefore, the record was not developed as to the reasons underlying counsel's conduct. *See Thompson*, 9 S.W.3d at 813. Travis's motion merely alleged that, "[d]efendant was afforded ineffective assistance of counsel." No specific complaints were raised regarding counsel's performance and the motion was not supported by any affidavits. The trial court sustained the State's written objections to the motion and denied it on procedural grounds.

In the face of a record that is silent as to the reasons underlying trial counsel's conduct, we conclude that Travis has failed to overcome the strong presumption that counsel rendered effective assistance. *See id.* at 812-13; *see also Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012). With respect to the videotaped interview, the record shows that defense counsel did raise hearsay and other objections to certain portions of the videotape, which were overruled. The failure to file a pre-trial motion to suppress the videotape could have been a strategic decision based on Travis's defense that he suffered from PTSD and the secondary conditions of alcoholism and polysubstance abuse, as evidenced by his condition on the videotape. In addition, in view of Travis's guilty plea, he has not shown how he was prejudiced by the absence of a pre-trial motion to suppress the admission of the videotape.

With respect to the medication administered to Travis at trial, the record shows that it was Travis who requested the bailiff give him the medication during his punishment phase testimony, and that defense counsel then asked Travis about the medication in front of the jury. Travis answered that he was "not 100 percent [sure] of what the name of it is." When his counsel asked what the purpose of the medication was, Travis answered that it "[j]ust calms me down." Travis testified that he first sought counseling through the Veterans Administration a few months after

the burglary occurred. He was diagnosed with PTSD on April 3, 2014, one month before trial, and was placed on Vistaril for PTSD and Zoloft for drug-induced mood disorder and depression. Contrary to the complaint on appeal, defense counsel did inquire about the medications' effects, and Travis stated that they help him think more clearly and handle his emotions better. Therefore, the record refutes Travis's argument that his counsel's performance was deficient because he failed to inquire into the medication and its effects.

Based on the foregoing reasons, we overrule Travis's issues on appeal and affirm the trial court's judgment.

Rebeca C. Martinez, Justice

DO NOT PUBLISH